

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CATHERINE A. DEHAVEN,

and

SOMPHOT A. JANSAWANG,

Case No. 3:15cv0026

        Plaintiffs,

v.

BANK OF AMERICA, N.A.,

Serve:      CT Corporation System
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060

            Defendant.

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, CATHERINE A. DEHAVEN and SOMPHOT A. JANSAWANG, individually and on behalf of all others similarly situated, by counsel, and allege the following facts that entitles them to relief, both as a class and individually:

## PRELIMINARY STATEMENT

1.      Plaintiffs, Catherine A. Dehaven and Somphot A. Jansawang ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege that Defendant BANK OF AMERICA, N.A. wrongfully foreclosed on their home without satisfying the conditions precedent to foreclosure in Plaintiffs' Deed of Trust, which was insured by the Federal Housing Administration ("FHA").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332. Plaintiffs and all members of the putative class allege that they have suffered substantial actual damages for

1

the loss of their homes, and related injury in every instance greater than $75,000. Further, Plaintiff alleges for themselves and each member of the putative class a claim for punitive damages in excess of $75,000. Further, the injunctive relief sought as to each class member is calculated at or above $75,000.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the Defendant maintains its registered offices within the boundaries of the Eastern District of Virginia.

**PARTIES**

4.     Plaintiff Catherine A. Dehaven is a natural person who resides in Virginia.

5.     Plaintiff Somphot A. Jansawang is a natural person who resides in.

6.     Defendant Bank of America, N.A. ("Bank of America") is a foreign corporation with a principal place of business in North Carolina, who operates as a mortgage originator and servicer in the Commonwealth of Virginia. At a times relevant hereto, Bank of America was the beneficiary of Plaintiffs' Note and Deed of Trust.

**FACTUAL ALLEGATIONS**

***Plaintiffs Obtain a Mortgage Loan***

7.     In 2008, Plaintiffs borrowed $108,000 in order to finance the purchase of their home. After the loan was originated, the loan was subsequently assigned and transferred to Bank of America.

8.     The Note was secured by a Deed of Trust and recorded in the Circuit Court Clerk's office.

***Bank of America Forecloses on Plaintiffs' Home***
***Without Complying With The Condition Precedent to Foreclose***

9.      The Federal Housing Administration ("FHA") was created by Congress as part of the National Housing Act of 1934 The FHA insures loans made by lenders to qualifying homebuyers. The FHA is part of the Department of Housing and Urban Development ("HUD").

10.      In the case of a default, HUD insures the full value of qualified mortgages making such loans risk-free for lenders. Because of this, HUD has identified servicing practices that it considers acceptable for mortgages it insures. It is the intent of HUD that "no mortgagee shall commence foreclosure or acquire title to a property until [its servicing] responsibilities... have been followed." 24 C.F.R. § 203.500.

11.      HUD's Handbook on Administration of Insured Home Mortgages describes the Mortgagee Collection Attitude "...when acquiring the servicing of a mortgage from another mortgagee, at that time it committed itself to assume the added costs and effort required to service those mortgages in accordance with HUD guidelines should they become delinquent.http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/h andbooks/hsgh/4330.1 (Chapter 11, last viewed March 24, 2014).

12.      All Virginia Deeds of Trusts (including Plaintiffs) insured by FHA and HUD state that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if...."

13.      All Virginia Deeds of Trust (including Plaintiffs) further provide that "[i]n many circumstances regulations issued by the Secretary will limit [the] [l]ender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument ***does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary***." (emphasis added).

14.     The regulations, among other things, require a "face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced..." 24 C.F.R. § 203.604.

15.     To that end, the regulations provide that "[s]uch a reasonable effort to arrange a face-to-face meeting shall also include *at least one trip to see the mortgagor at the mortgaged property*, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is knows that the mortgagor is not residing in the mortgaged property." 24 C.F.R. § 203.604(d) (emphasis added).

16.     In *Matthews v. PHH Mortgage Corp.*, the Virginia Supreme Court held that the requirements of 24 C.F.R. § 203.604 are incorporated as conditions precedent to a foreclosure sale under the Deed of Trust. (April 20, 2012).

17.     The "purpose of the face-to-face meeting is to 'reduc[e] the incidence of foreclosure' by providing an environment in which the 'mortgagee employee can often determine the cause of the default, obtain financial information[,] establish a repayment schedule[,] and prevent foreclosure by influencing the payment habits of mortgagors." *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 517, (2014) (quoting U.S. Department of Housing and Urban Development, Handbook 4330.1 Rev–5: Administration of Insured Home Mortgages § 7–7(C)(1) (1994), *available at* http://portal.hud. gov/hudportal/documents/huddoc?id=43301c7- HSGH.pdf).

18.     As a matter of policy and common practice, Bank of America made absolutely no effort to arrange a face-to-face meeting with Plaintiffs or the putative class prior to their foreclosure or after their default.

19.     Moreover, consistent with its policy not to conduct face-to-face interviews, Bank of America never made a trip to Plaintiffs' Property where its intent was to provide loss mitigation services.

20.     Plaintiffs' property is within 200 miles from a branch office of Bank of America; therefore, they were entitled to a face-to-face interview.

21.     Instead of arranging a face-to-face interview, as a matter of common practice, Bank of America merely has a third party company, National Creditors Connection, Inc. ("NCCI"), send correspondence to Virginia consumers encouraging them to contact Bank of America.

22.     To the extent NCCI representatives actually attempt to visit consumers, their sole purpose of the visit is to verify occupancy and encourage borrowers to contact Bank of America and not to provide loss mitigation services.

23.     Indeed, NCCI's form letter to consumers states as much. For example, NCCI provided correspondence to Plaintiffs on July 11, 2014, indicating "NCCI is contracted with Bank of America for the sole purpose of making contact with you and to deliver Bank of America communications to you via NCCI Field Visits. *The purpose of a NCCI Field visit is merely to encourage you to contact Bank of America*." (emphasis added).

24.     Moreover, upon information and belief, NCCI representatives performing services on behalf of Bank of America do not receive any training in loss mitigation, either generally or as it relates to Bank of America.

25.     Likewise, upon information and belief, NCCI representatives do not have any authority to establish a repayment schedule or enter into other loss mitigation alternative with Bank of America.

26.     Instead, pursuant to its contract with Bank of America and consistent with its representations, NCCI merely obtains documents on Bank of America's behalf.

27.     Worse yet, NCCI is actually a debt collector and performs foreclosure related work under the guise of a field visit to collect documents. For example, upon information and belief, although undisclosed to the consumer, they are charged for NCCI's visit its primary purpose for

the visit is to verify occupancy and take pictures of the property as part of Bank of America's property preservation process.

28.     In any event, because the conditions precedent of FHA face-to-face meetings have not been attempted, let alone accomplished, the Plaintiffs' and the putative class members' Deeds of Trust did not authorize foreclosure.

29.     As a result of the breach of contract, Plaintiffs suffered damages far in excess of $75,000, including but not limited to: (1) the equity in their property; (2) the future value and equity in the property; (3) damage to their credit; (4) future moving expenses; (5) future rent; and (6) expenses and costs attributed to the wrongful foreclosure.

30.     At the time of the foreclosure, the value of Plaintiffs' property and the balance of their loan exceeded $75,000.00.

**COUNT ONE:**
**BREACH OF CONTRACT**

**CLASS CLAIM**

31.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

32.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "Contract Class") initially defined as follows:

> All natural persons (a.) located in the Commonwealth of Virginia (b.) who had a mortgage loan on or after January 10, 2010, which was insured by the Federal Housing Administration; (c.) and suffered a completed foreclosure when Bank of America was the beneficiary of the Deed of Trust (d.) for a property that Bank of America's pre-foreclosure records stated a value greater than $75,000.

> Plaintiffs are members of the proposed Contract Class.

33.     **Numerosity.   Fed. R. Civ. P. 23(a)(1).** Plaintiffs does not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control

6

of Bank of America. However, based on the volume of foreclosures conducted by Bank of America in the past five years, Plaintiff reasonably estimates that the proposed class size is hundreds, if not thousands, of Virginia consumers. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

34.     Based on the estimated size of the class, Plaintiff believes the amount in controversy exceeds $5 million due to loss of equity of the putative class members and other expenses associated with the loss of their homes to foreclosures.

35.     **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. All members of the class have been subject to and affected by the same conduct. These common legal and factual questions include, among other things and without limitation:

   a.     The review and interpretation of the FHA's form Deed of Trust;

   b.     The nature, scope and operation of Bank of America's obligations to homeowners under the FHA;

   c.     Whether Bank of America's failure to make any effort to make a trip to consumers' properties prior to foreclosure amounts to a breach of contract; and

   d.     Whether the Court can order Bank of America to pay damages and what the proper measure of damages is, and also whether the Court can enter injunctive relief and whether the foreclosure sale is void?

36.     **Typicality. FED. R. CIV. P. 23(a)(3)**. Plaintiffs' claims are typical of the claims of each Class member for the reasons alleged in the previous paragraph and in that the other members of the class were subject to the same conduct as Plaintiffs, signed the same agreement and were

7

met with the same absence of the requirements of the face-to-face interview. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

37.     **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. FED. R. CIV. P. 23(a)(4). Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

38.     **Superiority.**   As alleged previously, there are significant questions of law and fact common to the Contract Class members. These predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   FED. R. CIV. P. 23(b)(3). The claims in this case and the circumstances of class members are such that individual prosecution would be extremely unlikely and would prove burdensome and expensive given the complex and extensive litigation necessitated by Bank of America's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation; it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Bank of America's conduct.   By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

39.     **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to the Plaintiff and the Class members. FED. R. CIV. P.

23(b)(2). Plaintiffs ask for a declaration that the foreclosure deed was void, and an injunction against further attempts to foreclose until and unless the terms of the Deed of Trust have been met.

40.     As described above, a Deed of Trust is construed under Virginia law as a contract.

41.     As a precondition to foreclosure under the terms of the Deed of Trust, Bank of America was required to make at least one trip to Plaintiffs' property prior to foreclosure to provide loss mitigation services as required by the FHA.

42.     Bank of America breached the Deed of Trust and did not satisfy the preconditions to foreclosure due to its failure to make at least one trip to see Plaintiffs and the putative class members and/or by sending a sham NCCI representative whose sole purpose for the visit was to collect documents.

43.     Bank of America's breaches of the Note and Deed of Trust have caused Plaintiff and the putative class members to suffer economic damages for which there is no adequate remedy at law, and for which Bank of America should be held liable.

44.     By means of example only, Plaintiff and members of the putative class lost their homes, lost equity in their homes or were forced to pay relocation expenses as a direct result of Bank of America's conduct.

45.     The value of each putative class member's economic loss is greater than $75,000.

46.     Moreover, Plaintiffs on behalf of themselves and the putative class requests that the Court declare the foreclosure sale void or in the alternative voidable, impose a resulting trust, or in the alternative, a constructive trust for their benefit so that their home can be deeded back to them.

47.     Plaintiffs and the putative class members are also entitled to actual damages for each class member who has incurred such damages.

WHEREFORE, Plaintiffs move for class certification and for judgment against the Defendant, as alleged for actual damages, for injunctive and declaratory relief, and for attorney's fees and costs, and such other specific or general relief the Court does find just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CATHERINE A. DEHAVEN &
SOMPHOT A. JANSAWANG**
By Counsel

_____
Kristi Cahoon Kelly (VSB #72791)
Andrew J. Guzzo (VSB #82170)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard Anthony Bennett, Esq. (VSB #37523)
Susan Mary Rotkis, Esq. (VSB #40693)
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Matthew J. Erausquin, VSB No. 65434
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone:    (703) 273-7770
Facsimile:    (888) 892-3512
Email: matt@clalegal.com

_Counsel for Plaintiffs_