IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

CATHERINE A. DEHAVEN,

and

SOMPHOT A. JANSAWANG,

      Plaintiffs,

v.

BANK OF AMERICA, N.A.,

      Defendant.

Civil Action No. 3:15cv0026-JAG

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
PLAINTIFFS' CLASS ALLEGATIONS**

Defendant Bank of America, N.A. (the "Bank"), by counsel, submits this memorandum in support of its Motion to Strike Plaintiffs' Class Allegations.

Motions to strike class allegations are properly granted when the face of the complaint shows that no class could be certified. Based on Plaintiffs' own allegations, neither time nor discovery can yield a certifiable class under Rule 23(b)(3) or (b)(2). First, common issues cannot predominate, as required under Rule 23(b)(3). Simply establishing whether each putative class member suffered any cognizable injury caused by the Bank's alleged violation, and if so, what types and amounts of damages were suffered, would swamp this Court in a deluge of mini-trials. Similarly, under Rule 23(b)(2), Plaintiffs impermissibly seek injunctive relief to void in one stroke hundreds, if not thousands, of Virginia foreclosures completed over the past five years. Yet it is already clear that this Court should not take that step and cannot properly do so in one stroke (which would ignore countless innocent purchasers and class members who may

not want their old houses back).  The Bank respectfully asks this Court grant this motion to

strike.

**I.      Striking class allegations before discovery is proper when the unsuitability of class treatment appears on the face of the complaint.**

This Court has the authority to strike class allegations prior to discovery.  "Rule

23(d)(1)(D) . . . expressly authorizes a motion to strike class allegations."  1 James M.

McLaughlin, McLaughlin on Class Actions § 3:4 (11th ed. 2014); *see also* Fed. R. Civ. P.

23(d)(1)(D) (permitting courts to "requir[e] that the pleadings be amended to eliminate

allegations about representation of absent persons"); Fed. R. Civ. P. 23(c)(1)(A) (ordering class

certification decisions to be made at "an early practicable time").  As the Supreme Court has

observed, "sometimes the [class certification] issues are plain enough from the pleadings."  *Gen.*

*Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

Numerous courts have recognized that motions to strike class allegations on the pleadings

are procedurally proper.  *E.g.*, *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 n.2 (4th Cir.

2013), *cert. denied*, 134 S.Ct. 2871 (2014) (reviewing the grant of a motion to strike class

allegations in light of *Wal-Mart v. Dukes*); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d

943, 949 (6th Cir. 2011) (holding that a motion to strike class allegations was "not . . . reversibly

premature," noting that "nothing in the rules says that the court must await a motion by the

plaintiffs"); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming

dismissal of class allegations on the pleadings, rejecting an argument that striking class

allegations was procedurally improper).

Although motions to strike class allegations are not common, they "are appropriate where

the unsuitability of class treatment is evident on the face of the complaint and uncontrovertible

facts."  1 McLaughlin on Class Actions § 3:4.  Many courts, including those within this Circuit,

have applied this rule and granted motions to strike.  *E.g.*, *Cornette v. Jenny Garton Ins. Agency, Inc.*, No. 2:10-cv-60, 2010 WL 2196533, at *2 (N.D. W.Va. May 27, 2010) ("Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings."); *Stanley v. Central Garden & Pet Corp.*, 891 F.Supp.2d 757, 769-72 (D. Md. 2012) (granting motion to strike class allegations in part); *Ross-Randolph v. Allstate Ins. Co.*, No. 99-3344, 2001 WL 36042162 at *9 (D. Md. May 11, 2001) (granting a motion to strike class allegations where it was "apparent from the pleadings that individual factual determinations will constitute a significant part of this action").[1]

The purpose of motions like this one is to avoid expensive class discovery where such discovery would be futile.  Once it is clear that plaintiffs cannot craft a class that would satisfy Rule 23, no defendant should be forced through the wringer of broad class discovery.  Striking class allegations "thereby sav[es] the court and the parties from expensive discovery directed at a pointless debate of class treatment."  Brian Anderson & Andrew Trask, *The Class Action Playbook* 105 (Oxford Univ. Press 2010); *see also Pilgrim*, 660 F.3d at 949 (affirming the grant of a motion to strike because the court "cannot see how discovery or for that matter more time would have helped [plaintiffs]"); *Zarichny v. Complete Payment Recovery Servs., Inc.*, __ F.Supp.3d __, 2015 WL 249853, at *2 (E.D. Pa. Jan. 21, 2015) (granting a motion to strike where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies [in class

---

[1] *See also Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("Courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained."); *Tietsworth v. Sears Roebuck & Co.*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (asserting its "authority to strike class allegations prior to discovery if the complaint demonstrates a class action cannot be maintained" and granting the motion to strike); *Bevrotte v. Caesars Entertainment Corp.*, No. 11-543, 2011 WL 4634174, at *1 (E.D. La. Oct. 4, 2011) (granting a motion to strike class allegations on the face of the complaint).

allegations]"). This motion is procedurally proper based on the manifest deficiencies in the allegations of this Complaint.

## II.    Certification under Rule 23(b)(3) is improper on the face of the Complaint.

Classes seeking money damages must demonstrate compliance with the two requirements of Federal Rule of Civil Procedure 23(b)(3).[2] *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).  "Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." *Id.* at 357.  Here, the Complaint itself establishes that the class as pleaded will never be able to bear its burden to demonstrate predominance and superiority.

### A.    Common issues cannot predominate given inherently individualized causation, injury, and damages issues.

To maintain a class seeking money damages under Rule 23(b)(3), "common questions of law or fact must predominate" over individual issues. *EQT Prod. Co.*, 764 F.3d at 357 (citing Fed. R. Civ. P. 23(b)(3)).  Here, on the face of the Complaint, common issues do not predominate.  Even if the Bank followed a single uniform policy that failed to comply with the face-to-face regulation, causation, injury, and damages are not "capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

Plaintiffs' sole claim is breach of contract.  Compl. at 6.  A breach of contract requires proof of "injury or damage to the plaintiff caused by the breach of obligation." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (citation omitted).  There must be "a causal

---

[2] All class actions under Rule 23, whether for monetary or injunctive relief, must satisfy the four prerequisites in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *See EQT Prod. Co.*, 764 F.3d at 357.  The Bank will address these additional prerequisites at a later date, if necessary.

connection between the defendant's wrongful conduct and the damages asserted." *Covarrubias v. CitiMortgage, Inc.*, No. 3:14-cv-157, 2014 WL 6968035, at *2 (E.D. Va. Dec. 8, 2014) (Gibney, J.) (quoting *Saks Fifth Ave., Inc. v. James, Ltd.,* 272 Va. 177, 189 (2006)).  Thus, to sustain this breach of contract claim, Plaintiffs must plausibly plead that the Bank's alleged violation *caused injury* to each of their "hundreds, if not thousands" of alleged class members. Compl. ¶ 33.

Equally important, Plaintiffs must plausibly maintain that their burden of proving causation, injury and damages can be borne on a classwide basis.  *Comcast*, 133 S. Ct. at 1433 (holding that Rule 23(b)(3) predominance did not exist when plaintiffs' model for showing classwide injury failed).  Otherwise, "an overwhelming deluge of mini-trials" will predominate. *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 67 (4th Cir. 1977) (affirming denial of class certification because of the overwhelming predominance of thousands of individualized injury and damages questions); *see also Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993) (affirming denial of class certification when the question of "whether adequate notice was actually given and, if not, whether any harm resulted, is dependent upon consideration of the unique circumstances pertinent to each class member"); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) (recognizing that when "numerous complicated individual damage inquiries predominated over common issues," class certification may be denied).

Plaintiffs' own allegations show that countless complex individual analyses will be necessary to demonstrate causation and injury to each class member.  "Questions of individual damage calculations"—and not just damage, but causation and liability—will "inevitably overwhelm questions common to the class." *Comcast*, 133 S. Ct. at 1433.

**1.      It is obvious from the face of the Complaint that many putative class members suffered no injury caused by the alleged breach.**

Plaintiffs' putative class sweeps in every FHA-insured borrower in Virginia with a property valued over $75,000 on whom the Bank foreclosed in the past five years.  Compl. ¶ 32.  Many of the borrowers within this class definition suffered no injury from any breach.  Equally important, determining who may have suffered injury would require in-depth individualized analysis.  Therefore, common issues cannot predominate.

First, 24 C.F.R. § 203.604—the regulation allegedly violated— does not even *require* a face-to-face meeting or any effort toward one if the borrower "does not reside in the mortgaged property," or if the borrower "has clearly indicated he will not cooperate in the interview."  24 C.F.R. § 203.604(c)(1), (3).  The putative class, however, includes borrowers who fall into one or both of these exempt categories.  Compl. ¶ 32.  Certainly none of these borrowers could show causation or damages (and indeed, could not show any violation at all).  More importantly, determining whether the putative class member resided in the property, and if so, whether he refused to cooperate in an interview, will require "individual proof" by evidence that is "not easily amenable to class treatment."  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th Cir. 1998).

Second, contrary to Plaintiffs' assertions, the regulation does not require a face-to-face meeting, but instead requires only a "reasonable effort to arrange a meeting."  24 C.F.R. § 203.604(c)(5).  That "reasonable effort" can be as simple as a certified letter and a trip to the property, regardless of whether the borrower is home or answers the door.  *Id.* at § 203.604(d).  Here, the Complaint itself concedes that letters were sent and that *someone* visited many people's homes.  Compl. ¶¶ 21-23, 27 (quoting a letter sent and referring to NCCI "field visit[s]" and what their purposes were).  A putative class member who was not home or refused to answer

6

the door *cannot possibly* show that the visitor's status as a contractor, Compl. ¶ 21, alleged lack

of training, ¶ 24, or ulterior motives, ¶¶ 22, 26, caused him any injury.  In any case, the details of

the letters sent and the attempted visit(s) to each putative class member are "inherently

individualized."  *Broussard*, 155 F.3d at 342.

Third, many putative class members will not be able to show causation or injury from the

lack of a face-to-face meeting for countless other reasons.  Borrowers facing foreclosure

typically have missed numerous mortgage payments, resulting in numerous contacts with the

Bank and ample opportunities to work toward alternatives to foreclosure.  Sorting through these

details, as would be required to prove injury for each class member—would swamp the Court

with "an overwhelming deluge of mini-trials."  *Windham,* 565 F.2d at 67.

For instance, just three months ago, this Court held that "no reasonable jury could find

that CitiMortgage's violations of HUD regulations requiring a face to face meeting proximately

caused [plaintiff's] damages."  *Covarrubias*, 2014 WL 6968035, at *3 (E.D. Va. Dec. 8, 2014).

In *Covarrubias,* after a fact-intensive analysis, this Court concluded that the borrower's heroin

use, failure to seek a job, and inability to make even $150 payments after being given a

forbearance meant that the alleged failure to conduct a face to face meeting had nothing to do

with any damages or injury to the borrower.  *Id.*

Similarly, in *Rourk v. Bank of America*, the court ruled that "even if Plaintiff had

demonstrated that Defendant failed to make a reasonable effort to arrange a face-to-face meeting

with her, she has not established that such a failure caused her any damages."  *Rourk v. Bank of*

*Am. Nat'l. Ass'n*, No. 4:12-CV-42, 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013), *aff'd,* 587

F. App'x 597 (11th Cir. 2014).  The *Rourk* plaintiff failed to show causation and damages

because the bank had sent her multiple letters and called her many times over a two-year period,

during which she refused to make any payments on her loan.  *Id.* at *5-6.  Therefore, the alleged absence of a face-to-face meeting was not the cause of any injury to her.

Other putative class members will be unable to show injury for yet other reasons. *Anderson v. Bank of Am., N.A.*, No. 13-12834, 2013 WL 5770507, at *6 (E.D. Mich. Oct. 24, 2013) (holding that any breach of contract claim on face-to-face grounds would necessarily fail because the plaintiff had been offered and rejected a loan modification).[3]

Plaintiffs' proposed class action would require this Court to sift through hundreds or thousands of *Covarrubiases* and *Rourks* and *Andersons*.  Those cases reflect that such an alleged violation often does not cause *any* alleged injury— even among those who *choose* to bring individual lawsuits, and even among those given extensive individualized discovery.

Here, however, Plaintiffs implausibly, and non-specifically, claim that every class member lost their house because of these alleged violations.  Compl. ¶ 2 ("all members of the putative class . . . suffered substantial actual damages for the loss of their homes").  It would be error for this Court to presume on a classwide basis that the omission of a face-to-face meeting caused borrowers' foreclosures.

  **2.**  **The necessary mini-trials for every putative class member would overwhelm common issues here.**

Each and every putative class member here will have highly individualized causation, injury, and damages evidence.  Simply describing what must happen going forward to litigate this case proves this.

---

[3] And, admittedly, some borrowers may be able to show some sort of injury on unique, individual grounds.  *E.g.*, *Lindsey v. JPMorgan Chase Bank Nat'l. Ass'n*, No. 3:12-cv-4535-M-BH, 2013 WL 2896897, at *15 (N.D. Tex. June 13, 2013) (finding sufficient injury where plaintiff alleged that although he had funds available to stop it, foreclosure proceeded because the bank failed to conduct a face-to-face meeting, repeatedly refused to accept his payments, and delayed reviewing his loan modification application for two years).

Putative class members who had no face to face meeting will need to show that their circumstances entitled them to one, and that something probably would have been different had there been a proper meeting or reasonable effort to have one.  Each borrower will have a unique set of facts—from Covarrubias's drug addiction and failure to seek a job, to the Bank's numerous rebuffed other efforts to communicate with Rourk.

Among putative class members who *did* meet with NCCI employees representing the Bank, each must show that meeting with an NCCI employee, as opposed to a Bank employee, specifically caused him some identifiable injury.  Further, each will need to show that the alleged lack of training for NCCI's employees mattered—that a well-trained visitor likely would have achieved some kind of result that the actual NCCI employee did not.  This cannot be proven on a classwide basis, and surely cannot be proven using common proof.

In each case, the identity, status, and training of the visitor and the content of the conversation will be central, as will evidence of each borrower's financial situation, communication skills, and ability to present documents needed to trigger a loss mitigation review.  Courts have long recognized that oral exchanges are poor ground for planting class actions.  *E.g.*, *Broussard*, 155 F.3d at 341 ("The oral nature of the final review sessions makes them a particularly shaky basis for a class claim."); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888 (D.N.J. 1984) ("It is the general rule that an action based substantially on oral rather than written communications is inappropriate for treatment as a class action," noting an exception for "essentially identical representations . . . made to all members of the proposed class.").  And this individualized analysis of injury must occur for "hundreds, if not thousands" of borrowers statewide over a five-year period, involving countless different Bank representatives.  Compl. ¶ 33.

Next, among the unknown subset of putative class members who *can* show cognizable injury *and* causation, there would be complex mini-trials to establish damages.  Because every putative class member has unique circumstances, each also may have a unique damage claim, which cannot be ascertained on a class basis.  For instance, in *Squire v. Virginia Housing Development Authority*, the plaintiff in a face-to-face breach of contract lawsuit claimed damages for the loss of her house, some $35,000 for alterations made by the foreclosure purchaser, $8,600 in foreclosure fees, $3,500 in moving expenses, and living costs of $1,270 per month since the foreclosure sale, as well as negative effects on her credit ratings.  287 Va. at 517-18.  Other borrowers in other cases alleging the same breach of contract as here have claimed damages of a different sort.  *See, e.g.*, *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 WL 350527, at *2 (E.D. Va. Jan. 29, 2013) (plaintiffs sought to quiet title, plus $60,000 for "substantial inconvenience" and "damage to their credit history" and "legal expenses" in defending foreclosure and unlawful detainer actions).  Proving these types of damages necessarily will require significant individual, unique evidence.

Further, some past borrowers have claimed emotional distress damages from the exact type of breach of contract alleged here.  *E.g., Parris v. PNC Mortgage*, No. 2:14-cv-142, 2014 WL 3735531, at *5 (E.D. Va. July 28, 2014) (seeking "varied emotional distress" damages); *Sinclair v. Donovan*, No. 1:11-CV-00010, 2011 WL 5326093, at *8 (S.D. Ohio Nov. 4, 2011) (referring to "the daily trauma of the imminent foreclosure" as a basis for emotional distress damages).  Although emotional distress damages are generally not recoverable where only breach of contract is pleaded, the fact that borrowers allege and seek that type of redress demonstrates the highly individualized nature of their damages, if any.  In sum, there is no cohesive class here.

10

**B.      A class action is not superior to individual actions.**

A class action that is not "superior to other available methods of litigation" also cannot be maintained under Rule 23(b)(3). *EQT Prod. Co.*, 764 F.3d at 357. When putative class members have strong "interests in individually controlling the prosecution or defense of separate actions," a class action is not "superior." Fed. R. Civ. P. 23(b)(3)(A).

Here, on the face of the Complaint, Plaintiffs plead that every class member lost a house and has a claim worth at least $150,000. Compl. ¶ 2. Taking those allegations as true, putative class members have strong financial and emotional incentives to control their own actions. Indeed, a class action with individual claims so large and so personal as this one offends the "policy at the very core of the class action mechanism," which is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Gunnells*, 348 F.3d at 426 (citation omitted).

First, the simple size of the individual claims alleged here favors allowing individuals to control their own claims and disfavors class treatment. For instance, in *Zinser v. Accufix Research Inst., Inc.*, the court affirmed a finding of no superiority where individual class members' claims were allegedly worth at least $50,000 each. 253 F.3d 1180, 1190–91 (9th Cir. 2001). The *Zinser* court reasoned that such sizeable damages "sugges[t] that individual claims might economically and reasonably be pursued individually." *Id.* at 1191 n.7. Similarly, in *Benner v. Becton Dickinson & Co.*, the court concluded that a class action was not superior where individual class members' claims exceeded $75,000, such that it was "not a case where the potential recovery for each plaintiff is *de minimis* and a class action is necessary." 214 F.R.D. 157, 173 (S.D.N.Y. 2003); *see also Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 392-93 (D. Kan. 1998) (concluding that a class action was not superior because "plaintiffs allege

damages in excess of $75,000" and therefore "have an interest in making individual decisions");

*Martin v. Mountain State Univ., Inc.*, No. 5:12-03937, 2014 WL 1333251, at *4 (S.D.W. Va.

Mar. 31, 2014) (finding no superiority where "the potential individual damages awards in this

matter are substantial rendering the class action mechanism less useful and giving a strong

interest to class members in individually controlling the prosecution of their claims").

Here, on its face, the Complaint alleges that each class member suffered "injury in every

instance greater than $75,000." Compl. ¶ 2. It also claims additional punitive damages of

$75,000 for every class member. *Id.* The Complaint even limits the class to owners of property

valued over $75,000, presumably to make its allegations of significant harm more plausible.

Compl. ¶ 32. The named plaintiffs, whose claims are allegedly "typical of the claims of each

Class member," had a $108,000 loan and "suffered damages far in excess of $75,000, including

but not limited to: (1) the equity in their property; (2) the future value and equity in the property;

(3) damage to their credit; (4) future moving expenses; (5) future rent; and (6) expenses and costs

attributed to the wrongful foreclosure." *Id.* at ¶¶ 7, 29, 32, 36. Given the sheer scope of the

damages each class member is alleged to have suffered, each person has a strong incentive to

pursue and control their own claim.

Second, in addition to the financial scope of the claims, the fact that the allegations here

relate to foreclosures through which putative class members lost their houses favors individual

actions over a class. "[C]laims that have a significant impact on the lives of the plaintiffs" give

potential class members "a substantial stake in making individual decisions on whether and when

to settle." *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) (denying

certification), *aff'd Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also Plant v.

Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2008 WL 4951352, at *3 (E.D. Va. Nov. 12,

12

2008) (denying certification and noting that "the class members' interests in individually controlling the prosecution or defense of separate actions is high" in a case where the plaintiff class were condominium purchasers).

People in jeopardy of losing their houses, or who have lost their houses, have strong personal incentive to pursue their own claims. *See In re Bank of Am. Home Affordable Modification Program Contract Litig.*, No. 10-2193-RWZ, 2013 WL 4759649, at *14 (D. Mass Sept. 4, 2013) (finding a class action not superior because "as the many mortgage-related cases in the federal courts attest, individual plaintiffs are normally well-motivated to bring any claims they might have in order to save their homes"); *Lester v. Percudani*, 217 F.R.D. 345, 354 (M.D. Pa. 2003) (finding a class action not superior because the proposed class members "suffered foreclosures on their homes" and therefore had "sufficient incentive to bring their claims individually"); *Delta Funding Corp. v. Harris*, 912 A.2d 104, 115 (N.J. 2006) (noting that a borrower whose "home is at stake in the foreclosure proceeding makes it likely that she would contact an attorney" and that such a person "has adequate incentive to bring her claim as an individual action").

Here, the Complaint's single breach of contract count, as alleged, amounts to wrongful foreclosure, based on the process by which each putative class member lost his or her house. *See, e.g.*, Compl. ¶ 32.  Many putative class members may have already litigated this claim— indeed, it has been clear that violating the face-to-face requirement is a defense to foreclosure in Virginia since 2012.  *Mathews v. PHH Mortg. Corp.*, 283 Va. 723 (2012).  Others may have sought to stop their foreclosures by bringing different claims that would preclude raising this breach of contract claim now.  Even among the rest (and accepting all allegations as true, only for purposes of this motion), the extremely personal nature of this lawsuit favors individual, not

13

class, actions.  Class members presumably have varying personal financial situations that would influence their strategies in pursuing their own claims.  For all of these reasons, it is evident from the Complaint that a class action is *inferior* to individual litigation on this claim.

### III.    Certification under Rule 23(b)(2) is also improper on the face of the Complaint.

Plaintiffs also request certification under Rule 23(b)(2).  Compl. ¶ 39.  Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The face of the Complaint reflects that certification under Rule 23(b)(2) cannot occur.

First, Rule 23(b)(2) does not permit certifying classes that seek meaningful money damages for individual class members.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) (rejecting certification of employees' claims for back pay based on sex discrimination, and holding that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages").  Because Rule 23(b)(2) does not require "predominance, superiority, mandatory notice, [or] the right to opt out," it is suited only for classes seeking "an indivisible injunction benefitting all its members at once."  *Id.* at 2558; *see also Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 410 (D. Md. 2014) (refusing to certify a Rule 23(b)(2) class "because damage determinations would need to be made on an individual basis for over 7,000 [class members], and each class member could receive a different monetary award or no monetary award").

In this case, the Complaint seeks individualized money damages, namely compensatory and punitive damages of $150,000 or more for each class member for the sole breach of contract

claim.  Compl. ¶ 2.  Thus, Rule 23(b)(2) does not apply here.  *Wal-Mart*, 131 S. Ct. at 2558 ("we think it clear that individualized monetary claims belong in Rule 23(b)(3)").

Second, Rule 23(b)(2) does not permit certifying a class for injunctive relief when the injunctive relief would be *individualized*.  "As the Supreme Court has instructed, 'the key to the (b)(2) class is the indivisible nature of the . . . remedy warranted.'"  *EQT Prod. Co.*, 764 F.3d at 357 (quoting *Wal-Mart*, 131 S. Ct. at 2557).  "Certification under this provision is appropriate only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Id.*  Rule 23(b)(2) does not apply "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Wal-Mart*, 131 S. Ct. at 2557.  Indeed, Rule 23(b)(2) was designed for, and is best suited to, civil rights cases in which a single court order can broadly enjoin certain types of discrimination.  *Harris v. Rainey*, 299 F.R.D. 486, 494 (W.D. Va. 2014) (describing the history of Rule 23(b)(2) and certifying a gay marriage class).

Here, Plaintiffs ask this Court to declare each class member's foreclosure sale "void" or "voidable," and make arrangements to return the deeds.  Compl. ¶ 46.  That is, Plaintiffs request the extraordinary relief of a legal declaration invalidating in one stroke hundreds, and possibly thousands, of foreclosures in Virginia, dating back five years.  It is clear even at this early stage that given the manifest distinctions between putative class members, this Court could not and should not enter such "a single injunction" that would "provide relief to each member of the class."  *Wal-Mart*, 131 S. Ct. at 2557.

As a threshold matter, not every member of the class will be able to show any injury at all from the Bank's allegation violation—much less injury warranting voiding a past foreclosure.  *See supra* at 6-8.  Moreover, many class members may not *want* their old house back, regardless.

*E.g., Squire*, 287 Va. 207 n.3 (noting that the *Bayview* plaintiff had not asked the courts to set aside her completed foreclosure); *see also Bayview Loan Serv., LLC, v. Simmons*, 275 Va. 114, 119 (2008) (affirming $156,000 in damages).  Finally, even for class members who *could* show injury and *do* want their house back, voiding a past foreclosure—especially one several years old—inherently requires highly individualized analysis.  After all, an innocent purchaser (or more than one innocent purchaser) may be involved.  *See Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) (noting that rescinding a foreclosure sale "is often impossible because the real estate has been purchased by an innocent third party").  In sum, there is no "indivisible" remedy here; no remotely plausible single stroke that will provide injunctive relief to every putative class member.  *Wal-Mart*, 131 S. Ct. at 2557.  Certification under Rule 23(b)(2) cannot occur.

## CONCLUSION

For these reasons, Defendant Bank of America, N.A. respectfully asks this Court to grant this Motion to Strike Class Allegations.

Date:  March 6, 2014                          Respectfully submitted,

                                             /s/ Brian E. Pumphrey
                                             Brian E. Pumphrey (VSB No. 47312)
                                             Matthew A. Fitzgerald (VSB No. 76725)
                                             McGuireWoods LLP
                                             One James Center
                                             901 East Cary Street
                                             Richmond, Virginia 23219
                                             Tel. 804.775.1000
                                             804.775.1061 (Direct FAX)
                                             bpumphrey@mcguirewoods.com
                                             mfitzgerald@mcguirewoods.com

                                             Robert W. McFarland (VSB No. 24021)
                                             McGuireWoods LLP
                                             World Trade Center
                                             101 West Main Street

16

Suite 9000
Norfolk, Virginia 23510-1655
Tel. 757.640.3716
757.640.3966 (Direct FAX)
rmcfarland@mcguirewoods.com

Jodie N. Herrmann (VSB No. 73035)
McGuireWoods LLP
Fifth Third Center
201 North Tryon Street
Suite 3000
Charlotte, North Carolina 28202
Tel. 704.343.2329
704.444.8785 (Direct FAX)
jherrmann@mcguirewoods.com

*Counsel for Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2015 copies of the foregoing Motion were electronically filed and served through the CM/ECF system, to the following counsel:

Kristi Cahoon Kelly (VSB #72791)
Andrew J. Guzzo (VSB #82170)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard Anthony Bennett, Esq. (VSB #37523)
Susan Mary Rotkis, Esq. (VSB #40693)
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Matthew J. Erausquin, VSB #65434
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-273-7770
Fax: 888-892-3512
Email: matt@clalegal.com

*Counsel for Plaintiffs*

　　　　　　　　　　　　　_____/s/ Brian E. Pumphrey_____
　　　　　　　　　　　　　Brian E. Pumphrey (VSB No. 47312)
　　　　　　　　　　　　　McGuireWoods LLP
　　　　　　　　　　　　　One James Center
　　　　　　　　　　　　　901 East Cary Street
　　　　　　　　　　　　　Richmond, Virginia 23219
　　　　　　　　　　　　　Tel. 804.775.1000
　　　　　　　　　　　　　804.775.1061 (Direct FAX)
　　　　　　　　　　　　　bpumphrey@mcguirewoods.com
　　　　　　　　　　　　　*Counsel for Defendant Bank of America, N.A.*